Argued and submitted March 4, 1997, decision of Court of Appeals affirmed, judgment of the circuit court reversed, and case remanded to the circuit court for further proceedings April 24, 1998

Heriberto M. HERNANDEZ,
*Respondent on Review,*
*v.*

BARBO MACHINERY CO.,
an Oregon Corporation,
and Buckner-Weatherby Co., Inc.,
a wholly-owned subsidiary of
C.B. Tool & Supply, Inc.,
a foreign corporation,
*Petitioners on Review.*

(CC 9310-06393; CA A85962; SC S43476)

957 P2d 147

Lisa E. Lear, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, argued the cause on behalf of petitioners on review. With her on the briefs was Stephen F. English.

Ridgway K. Foley, Jr., of Greene & Markley, P.C., Portland, argued the cause on behalf of respondent on review. With him on the brief was James G. Breathouwer, of Breathouwer & Gilman, Portland.

Maureen Leonard, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

KULONGOSKI, J.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision. Graber, J., resigned March 31, 1998, and did not participate in this decision.

## KULONGOSKI, J.

The issue in this products liability case is whether the trial court committed reversible error in refusing to give plaintiff's requested jury instruction. The Court of Appeals concluded that it did. *Hernandez v. Barbo Machinery Co.*, 141 Or App 34, 917 P2d 30 (1996). We affirm the decision of the Court of Appeals.

We take the following facts from the opinion of the Court of Appeals:[1]

"Plaintiff is a maintenance mechanic who serviced Westwood Manufacturing Company's (Westwood) machinery. On June 25, 1993, plaintiff discovered a new saw at the Westwood work site, which he had never seen before, and with which he was unfamiliar. The saw, called a Belsaw, is sold by defendants. It consists of a cabinet, in which the saw blade is encased, with a work area on top where the wood is cut. The blade is not visible when the cabinet door is closed.

"Plaintiff decided to investigate the saw more closely to see if it needed maintenance. He looked for the on/off switch to determine whether the saw was turned off, but because the area was dark and because the switch was not located in any of the customary positions, plaintiff could not find the switch. He also placed his hand on the top of the cabinet, but could not feel a vibration from the saw, nor could he hear any sound emanating from the cabinet. However, unbeknownst to plaintiff, the saw was operating.

"Plaintiff then opened the cabinet door and squatted on the floor to get a closer look at the inside of the cabinet. Using a flashlight, he looked inside the cabinet. While he was looking, he slipped on sawdust, causing his right hand to go inside the cabinet and into the moving saw blade. The accident resulted in the partial amputation of plaintiff's right hand." 141 Or App at 36.

---

[1] The Court of Appeals correctly reviewed the evidence in the light most favorable to the establishment of the facts necessary to require giving the requested instruction. *Carter v. Mote*, 285 Or 275, 279, 590 P2d 1214 (1979) (where a party losing before a jury contends that the loss was because of the court's failure to give a requested jury instruction, on appeal that party is entitled to have the evidence viewed in the light most favorable to the establishment of the facts necessary to require the requested instruction).

Defendant Buckner-Weatherby Company, Inc., a wholly-owned subsidiary of C.B. Tool & Supply, Inc., sold the subject saw to defendant Barbo Machinery Company. Barbo then sold the saw to Westwood.

Plaintiff sued defendants under the theory of strict products liability. He alleged that defendants' machine was dangerously defective in four respects:

"A. It was not equipped with a readily observable on/off switch which clearly showed what mode the saw was in at all times;

"B. It was not equipped with a limit switch on, or in conjunction with, its access door which would terminate the power to the blade in the event the door was opened;

"C. It was not equipped with a decal or similar device warning its users of the risk of opening the access door without first making certain that the saw was in the 'off' mode; and

"D. It was not equipped with a guard sufficient to prevent a user from coming into contact with the saw's revolving blade."

Defendants raised the affirmative defense of comparative fault, setting forth the following ten allegations of plaintiff's negligence:

"1. Plaintiff, as an experienced maintenance person, knew that machines contain on-off switches and further knew that with respect to this specific machine he had not yet located the on-off switch when he opened the door to the interior of the machine, thereby knowingly encountering the risk that the saw blade might be turning.

"2. Plaintiff knowingly encountered the risk that the machine might be running by opening the door to the interior of the Belsaw when he heard or should have been able to hear the sound of the saw blade running.

"3. Plaintiff knowingly encountered the risk that the machine might be running by ignoring the fact that when the door to the Belsaw was opened the noise from the blade was louder than when the door was

closed, thereby indicating that the machine was running and the blade was turning.

"4.    Plaintiff negligently set his feet in sawdust in an area in which the floor was obviously covered with sawdust which he could slip on.

"5.    Plaintiff knowingly encountered a risk of injury when he, having possession of a flashlight, failed to use it first on the exterior of the machine to locate the on-off switch and turn the machine off, before attempting to use the flashlight to see the interior of the machine.

"6.    Plaintiff knowingly encountered a risk of injury when he failed to follow standard and generally recognized safety rules of first unplugging the Belsaw before he attempted to inspect its interior.

"7.    Plaintiff knowingly encountered the risk of injury when he failed to ask any Westwood employee for a manual or for instructions as to how to turn the Belsaw off before he began his inspection.

"8.    Plaintiff knowingly encountered the risk of injuring himself on a machine whose blade was still moving by failing to follow a safe shutdown procedure prior to performing inspection or maintenance on the machine.

"9.    Plaintiff knowingly encountered the risk of injury to himself by placing his hand into the cabinet of the saw when the presence of the blade was open, obvious and constituted an observable danger.

"10.    Plaintiff knowingly encountered the risk of injuring himself on a machine when he saw the on-off switch on the Belsaw and failed to push the off button to shut the machine down."

Defendants' fourth allegation of plaintiff's comparative fault is the only one that does not allege that plaintiff knowingly encountered the risk of injury created by the alleged defects in the saw.

At trial, plaintiff requested the following jury instruction:

"Defendants have charged plaintiff with comparative fault; that is, they have alleged that the subject accident

and any injuries that plaintiff may have sustained as a result thereof, were caused, at least in part, by plaintiff's own fault in certain particulars. In that connection, I instruct you that an injured person's conduct which in fact was a cause of his or her injury, and which constitutes 'fault,' including negligence, may be considered in a products liability action, unless that person's alleged negligence consists in the kind of unobservant, inattentive, ignorant, or awkward failure to discover or to guard against the defect that goes toward making the product dangerously defective in the first place. In other words, contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence."

Plaintiff's requested jury instruction relied on this court's treatment of comparative fault in a products liability action in *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 610, 642 P2d 624 (1982).

The trial court refused to give plaintiff's requested jury instruction because the court believed that the substance of the instruction was a legal question for the court, not a question of fact for the jury. In instructing the jury, the trial court first reviewed the defects in the saw as alleged by plaintiff. The trial court then noted that, for their "affirmative defense," defendants "alleged that at the time of the accident the plaintiff himself was *negligent* in one or more of the following particulars," and then read to the jury defendants' ten allegations of plaintiff's alleged comparative fault.[2] The trial court then proceeded to instruct the jury. With respect to comparative fault, the trial court instructed the jury in part as follows:

"In order for the defendant[s] to establish comparative fault on the plaintiff's part, the defendant[s] must prove by a preponderance of the evidence that the plaintiff was at fault in at least one of the ways alleged, as I just read to you from the answer, which was a cause of injury or damage to the plaintiff.

"* * * * *

---

[2] Neither party challenges the trial court's use of the term "negligence," rather than "comparative fault," in its summary of the issues for the jury.

"The plaintiff and the defendant have each alleged that the injury was caused by the other's fault. This requires instructing you on the law of comparative fault.

"If you find that both the defendant and the plaintiff were at fault in any respect alleged which was a cause of the damage complained of, then you should compare the fault of the plaintiff to the fault of the defendant. In making this comparison, you are to measure the fault of the parties and not the mere physical causation of the injury.

"If the plaintiff's fault was greater than the defendants' fault, then the plaintiff is not entitled to a verdict in his favor. However, if the plaintiff's fault was equal to or less than the defendants' fault, then the plaintiff is entitled to a verdict in the plaintiff's favor.

"In other words, if the plaintiff's fault was more than 50 percent, then the plaintiff is not entitled to a verdict in the plaintiff's favor. On the other hand, if the plaintiff's fault is 50 percent or less, then the plaintiff is entitled to a verdict in his favor."[3]

The jury returned a verdict, finding that defendants were at fault in one or more of the ways alleged in the complaint and that plaintiff was at fault in one or more of the ways alleged in defendants' answer. The jury further found plaintiff's fault to be 50.5 percent and defendants' fault to be 49.5 percent. Because plaintiff's fault exceeded that of defendants, the trial court entered a judgment in favor of defendants. ORS 18.470. On appeal, the Court of Appeals concluded that the trial court's refusal to give plaintiff's requested jury instruction constituted reversible error. For the reasons discussed below, we agree.

■       This court has established rules for analyzing the question whether a trial court's refusal to give a party's requested jury instruction constitutes reversible error. First, if a party requests a jury instruction that correctly states the law on the subject in issue, that party need not register a separate objection to the court's other instructions in order to preserve for appellate review the question whether the court

---

[3] The parties do not challenge the jury instructions actually given by the trial court.

erred in declining to deliver the requested instruction. *Roberts v. Mitchell Bros.*, 289 Or 119, 129-30, 611 P2d 297 (1980).

■ Second, as a general rule, the parties in a civil action are entitled to jury instructions on their theory of the case if their requested instructions correctly state the law, are based on the current pleadings in the case, and are supported by evidence. *Denton v. Arnstein*, 197 Or 28, 46, 250 P2d 407 (1952); *Cline v. Bush*, 152 Or 63, 66-67, 52 P2d 652 (1935).

■ Regarding a trial court's refusal to give a requested jury instruction, however, there is no error if the requested instruction is not correct in all respects. *Hall v. The May Dept. Stores Co.*, 292 Or 131, 143, 637 P2d 126 (1981); *Beglau v. Albertus*, 272 Or 170, 179, 536 P2d 1251 (1975); *Denton*, 197 Or at 49. There also is no error by the trial court if the substance of the requested jury instruction, even if correct, was covered fully by other jury instructions given by the trial court. *Kabil Developments Corp. v. Mignot*, 279 Or 151, 158-59, 566 P2d 505 (1977); *Hansen v. Bussman*, 274 Or 757, 781, 549 P2d 1265 (1976); *Transpacific Leas. v. Klineline Sand*, 272 Or 133, 148, 535 P2d 1360 (1975). Neither is there error if the requested jury instruction is not necessary in order to explain the particular issue or point of law to the jury. That is, the requested jury instruction must pertain to a material issue in the case on which the court otherwise has not instructed the jury fully. *Wills v. Petros et al*, 225 Or 122, 130-31, 357 P2d 394 (1960) (trial court's refusal to give "sudden emergency" instruction not error where that legal issue did not pertain to facts of case); *cf. Resser v. Boise-Cascade Corporation*, 284 Or 385, 393, 587 P2d 80 (1978) (court commits error where it refuses to give a jury instruction needed to explain a material issue).

■■ Finally, an error in refusing to give a requested jury instruction requires reversal only if the jury instructions given by the trial court, considered as a whole, cause prejudice to the party requesting the instruction. *Hansen*, 274 Or at 781; *Denton*, 197 Or at 54. The party requesting an instruction is prejudiced if the trial court's failure to give the requested instruction probably created an erroneous impression of the law in the minds of the members of the jury and if that erroneous impression may have affected the outcome of

the case. *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970); *see Baker v. English*, 324 Or 585, 590, 932 P2d 57 (1997) (an error by the trial court substantially affects the rights of an aggrieved party if the outcome of the case either would have or may have been different had the error not occurred).

Applying the foregoing standards to the jury instruction requested by plaintiff in this case, we first inquire whether the requested jury instruction is a correct statement of the law.

■ In *Sandford*, this court held that a plaintiff's comparative fault could defeat a products liability claim if the plaintiff's fault is greater than the defendant's fault. In describing what conduct by a plaintiff properly could be attributed to the plaintiff as fault, this court stated:

> " 'Fault' includes contributory negligence except for such unobservant, inattentive, ignorant, or awkward failure of the injured party to discover the defect or to guard against it as is taken into account in finding the particular product dangerously defective." 292 Or at 610.

It is important to understand fully the origins and meaning of that passage from *Sandford*. In *Findlay v. Copeland Lumber Co.*, 265 Or 300, 509 P2d 28 (1973), the court addressed contributory negligence in the context of a products liability action for injuries that the plaintiff sustained when a ladder that he was using collapsed. At that time, contributory negligence completely barred a plaintiff's recovery. The *Findlay* court relied on *Comment n* to Section 402 A of *Restatement (Second) of Torts*[4] in holding that the plaintiff's

---

[4] *Comment n* to Section 402 A states:

"Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases * * * applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand, the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

alleged failure to maintain a proper lookout while using the ladder was not a proper defense to a strict liability claim:

> "The Comments clearly state that the user's negligent failure to discover a defect, or to take precautions against the possibility of its existence, is not a defense to a strict liability action." *Findlay*, 265 Or at 303.

The court, continuing to rely on Section 402 A, further held:

> "The seller's strict liability, as formulated in § 402 A, is a means of compensating the user of a defective product for injuries which are caused by that defect. A [plaintiff] who neither mishandles the product nor voluntarily and unreasonably uses it after learning of its dangerous condition should not be deprived of this protection on account of incidental carelessness, even though it plays some part in the accident, if in fact a defect in the product is a proximate cause of [plaintiff's] injuries." 265 Or at 305.

There was no occasion in *Findlay* for the court to consider ORS 18.470, Oregon's comparative fault statute, because the version of ORS 18.470 in place in 1973 applied only to negligence actions.[5]

In 1975, the Legislative Assembly amended ORS 18.470(1) to read:

> "Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense." Or Laws 1975, ch 599, § 1.

---

[5] *Former* ORS 18.470(1)(1971) provided:

"Contributory negligence, including assumption of the risk, shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property if such negligence contributing to the injury was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of such negligence attributable to the person recovering." Or Laws 1971, ch 668, § 1.

Two of the 1975 amendments are important to this case. First, the legislature "replaced the reference to an action for 'damages for negligence resulting in death or injury to person or property' with one to recover 'damages for death or injury to person or property' without limitation to negligence actions." *Sandford*, 292 Or at 596. Second, the legislature required a comparison of the parties' relative "fault" instead of their relative "negligence," as required by the former version of the statute. *Ibid.* That amendment extended the principle of proportional fault to actions in strict products liability. *Sandford*, 292 Or at 596-97; *Baccelleri v. Hyster Co.*, 287 Or 3, 597 P2d 351 (1979).

· The passage from *Sandford* on which plaintiff relies for his requested jury instruction represented the court's conclusion that the legislature carried forward, into the comparative fault regime adopted by the legislature in the 1975 version of ORS 18.470, the long-established principle that a plaintiff's incidental carelessness or negligent failure to discover or guard against a product defect is not an appropriate defense to that plaintiff's products liability action for injuries suffered because of the product defect. *Findlay*, 265 Or at 303, 305; *Restatement (Second) of Torts*, Section 402 A, *Comment n.* This court is bound by that interpretation. *Safeway Stores v. State Bd. Agriculture*, 198 Or 43, 80-81, 255 P2d 564 (1953); *State ex rel Peterson v. Martin*, 180 Or 459, 176 P2d 636 (1947) (stating the general principle that this court's previous interpretation, after briefing and argument, of a statute fairly arising in a case and necessary to its determination, constitutes binding precedent in this court and in lower courts under doctrine of *stare decisis*). Other forms of negligent conduct by a plaintiff, such as unreasonable misuse of the product, or unreasonable use despite knowledge of a dangerous defect in the product and awareness of the risk posed by that defect, are defenses to a strict products liability action. The jury instruction that plaintiff requested is a correct statement of the law regarding the kinds of negligent behavior that the jury can and cannot attribute to a plaintiff in considering that party's proportional fault in a strict products liability action.[6]

---

[6] Plaintiff's requested instruction repeated the rule stated in *Sandford*, including this court's reference to "contributory negligence." No party contends that the

Plaintiff's requested jury instruction was based on the amended pleadings. As discussed above, defendants raised comparative fault as a defense to plaintiff's products liability action, and plaintiff asserted that his negligence, if any, was of the type that the jury could not properly attribute to him in assessing his fault.

Plaintiff's requested jury instruction was supported by the evidence. Plaintiff concedes that there is evidence from which the jury reasonably could have concluded that plaintiff's negligent conduct or omission was other than a failure to discover or to guard against a defect in the saw. That evidence justifies delivery of a comparative fault instruction. However, plaintiff also argues, correctly, that it also was possible for the jury reasonably to conclude from the evidence presented that the saw was dangerously defective in one or more of the ways plaintiff alleged, that plaintiff's injury resulted from the dangerously defective condition of the saw, and that plaintiff's negligence, if any, consisted of an "unobservant, inattentive, ignorant, or awkward" failure to discover or to guard against defects in the saw. Plaintiff's requested jury instruction is supported by evidence, as required.

Plaintiff's requested jury instruction pertains to a material issue in this case on which the jury was not otherwise instructed. In a strict products liability action where a defendant alleges comparative fault, the trial court must perform two tasks. First, the trial court must determine, as a matter of law, whether the pleadings and evidence would permit a jury to find that the defendant has established the elements of the comparative fault defense. If so, the giving of a comparative fault instruction is appropriate.

As noted, the comparative fault defense requires allegations and evidence that plaintiff unreasonably misused the product, or that plaintiff had knowledge of a dangerous defect in the product and was aware of the risk posed by the defect, but that, despite that knowledge and awareness, plaintiff unreasonably used the product. Defendants alleged

---

reference to contributory negligence in plaintiff's requested instruction rendered it an erroneous statement of the law.

in their affirmative defense that plaintiff "knowingly encountered" a risk of injury by a variety of actions and, in one instance, by negligently setting his feet in sawdust. The trial court assumed that defendants' allegations adequately pleaded the elements of the comparative fault defense and, because there was some evidence that plaintiff had knowingly encountered the described risks and also was negligent by setting his feet in sawdust as alleged, that defendants had established the elements of the comparative fault defense. No party raises in this court the question whether the trial court's assumptions were erroneous. Consequently, we also assume that delivery of a comparative fault instruction was appropriate here.

■       Next, where a plaintiff requests a *Sandford* instruction such as the one requested by plaintiff here, the court must determine whether the pleadings and evidence are such that a jury reasonably could conclude that the plaintiff has established that the plaintiff's injury resulted, in whole or in part, from an "unobservant, inattentive, ignorant, or awkward" failure to discover or guard against alleged defects in the product. If so, the giving of a *Sandford* instruction is appropriate. The plaintiff is entitled to have the jury instructed correctly and adequately as to the kinds of negligent conduct that the jury may and may not attribute to him as a defense to a strict products liability action.

The instructions that the trial court gave in this case informed the jury that it could attribute fault to plaintiff if he engaged in the type of behavior specified by defendants' affirmative answer, *i.e.*, either by "knowingly" encountering a risk of injury or by engaging in negligent conduct in the face of an "obvious" danger. However, defendants' allegations of plaintiff's fault also encompass negligence that this court has ruled cannot be attributed to a plaintiff as fault.

■       Defendants alleged that plaintiff "negligently set his feet in sawdust * * * which he could slip on" (affirmative defense, allegation no. 4). The jury reasonably could have concluded that plaintiff did slip and that plaintiff's injury resulted from his negligent failure, while his feet were positioned in sawdust, to guard against defects in the saw, *e.g.*, the saw running while the cabinet door was open (plaintiff's

allegation of defect "B") and the lack of a blade guard inside the saw cabinet (plaintiff's allegation of defect "D"). If the court had instructed the jury properly, as requested by plaintiff, the jury reasonably could have found that, even if plaintiff was negligent in setting his feet in the sawdust while he worked on the saw, thereby creating a risk of injury from the alleged defects in the saw, such negligence consisted of an "unobservant, inattentive, ignorant or awkward failure" to discover or guard against the alleged defects in the saw. Instructed properly, the jury would have understood that it could not attribute that negligence to plaintiff as comparative fault. We conclude that the trial court failed to instruct the jury on an issue material to the outcome of the case.[7]

Because the trial court's jury instructions did not include the *Sandford* instruction requested by plaintiff or its substantial equivalent, and because the requested instruction is a correct statement of the law, is based on the current pleadings in the case, is supported by evidence presented at trial, and addresses a material issue in the case, the trial court erred in refusing to give plaintiff's requested jury instruction.

■ We next must determine whether the trial court's failure to give plaintiff's requested jury instruction was reversible error. As this court has noted, an error by the trial court substantially affects the rights of an aggrieved party if the outcome of the case either would have or may have been different if the error had not occurred. *Baker*, 324 Or at 590; *Waterway Terminals*, 256 Or at 370. Where such prejudice exists, the error requires reversal. *Id.*

In this case, plaintiff was harmed, because the jury may have based its comparative fault assessment on a misperception of the evidence resulting directly from the court's failure to give plaintiff's requested jury instruction. Therefore, the Court of Appeals correctly concluded that the trial

---

[7] We further note that the trial court characterized defendant's other nine allegations of comparative fault as "negligence." The jury thus was invited to consider any of the ten allegations as negligence without the leavening effect of the *Sandford* instruction requested by plaintiff.

court's failure to give the requested instruction was reversible error. Accordingly, we affirm the decision of the Court of Appeals.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.