235 P.3d 668 (2010)
348 Or. 442
The ESTATE OF Michelle SCHWARZ, Deceased, by and through her Personal Representative, Paul Scott SCHWARZ, Petitioner on Review,
v.
PHILIP MORRIS INCORPORATED, a foreign corporation, Respondent on Review.
CC 000201376; CA A118589; SC S053644.
Supreme Court of Oregon.
Argued and Submitted November 2, 2009.
Decided June 24, 2010.
*669 Maureen Leonard, Portland, argued the cause and filed the briefs for petitioner on review. With her on the briefs were Robert K. Udziela, D. Lawrence Wobbrock, Charles S. Tauman, and Richard A. Lane.
William F. Gary, Harrang Long Gary Rudnick P.C., Eugene, argued the cause and filed the briefs for respondent on review. With him on the briefs were Sharon A. Rudnick and Susan D. Marmaduke.
W. Eugene Hallman, Pendleton, filed a brief for amicus curiae Oregon Trial Lawyers Association.
*670 Before DE MUNIZ, Chief Justice, and DURHAM, BALMER, WALTERS, and KISTLER, Justices.[**]
WALTERS, J.
The Due Process Clause of the Fourteenth Amendment[1] prohibits a jury from imposing punitive damages to punish a defendant directly for harm caused to nonparties. However, a jury may consider evidence of harm to others when assessing the reprehensibility of the defendant's conduct and the appropriate amount of a punitive damages verdict. Philip Morris USA v. Williams, 549 U.S. 346, 356-57, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007) (Williams II). In this "low-tar" tobacco case, we decide that the trial court correctly refused defendant's requested instruction that would have informed the jury on the impermissible uses of evidence of harm to others without also instructing the jury on its permissible use, but that the trial court erred in giving an instruction on punitive damages that was, conversely, incomplete and therefore incorrect. We affirm the decision of the Court of Appeals vacating the jury's punitive damages award, Estate of Michelle Schwarz v. Philip Morris Inc., 206 Or.App. 20, 135 P.3d 409 (2006), and remand the case to the trial court for a new trial limited to the question of punitive damages.

I. FACTS AND PROCEDURAL POSTURE
In 2000, plaintiff, the husband and personal representative of decedent Michelle Schwarz, brought this action against defendant, Philip Morris. Plaintiff asserted three claims for relief based on allegations of negligence, strict product liability, and fraud in the manufacture, marketing, and research of defendant's brand of low-tar cigarettes. At trial in 2002, plaintiff adduced the following evidence.
Michelle Schwarz began smoking cigarettes in 1964 when she was 18 years old. She attempted to quit smoking numerous times but was unable to do so. In 1976, defendant introduced a new product, Merit cigarettes, to the market for tobacco products. Advertisements for the new brand touted that the cigarettes contained less tar than existing "full-flavor" cigarettes but still tasted like the full-flavor brands. Out of a belief that "low tar and nicotine filters are better for you," decedent switched from a full-flavor brand that defendant manufactured to its low-tar Merit brand. After switching brands, decedent continued to smoke the same quantity of cigarettesapproximately one pack per daybut subconsciously altered her method of smoking. She took longer puffs, inhaled the smoke more deeply, and held it longer in her lungs. In 1999, at the age of 53, decedent died from a brain tumor that was the result of metastatic lung cancer.
The method of smoking that decedent had adopted after switching to defendant's low-tar brand was consistent with the behavior of smokers generally. Persons addicted to nicotine in cigarettes tend to develop a certain "comfort level" of nicotine, and, when smoking cigarettes that contain less nicotine, those smokers are likely to "compensate"that is, adjust subconsciously the manner in which they smokein order to achieve that "comfort level." Compensation causes smokers of low-tar cigarettes to inhale the same levels of tar, the primary carcinogen found in cigarettes, as they would ingest by smoking a full-flavored brand. Defendant was not only aware of that phenomenon, that awareness played a major role in the development of its low-tar brand. A primary purpose of defendant's decision to bring low-tar cigarettes to market was to give smokers what one tobacco executive labeled a "crutch," that is, a product that enabled smokers to rationalize continued indulgence of a habit that they otherwise would consider to be deadly.
*671 Defendant's behavior with respect to the development and marketing of low-tar cigarettes was but one iteration of a larger pattern of deceiving smokers and the rest of the public about the dangers of smoking. See Schwarz, 206 Or.App. at 29-35, 135 P.3d 409; Williams v. Philip Morris Inc., 340 Or. 35, 39-43, 127 P.3d 1165 (2006) (Williams I) vacated on other grounds by Williams II, 549 U.S. 346, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007), on remand, 344 Or. 45, 176 P.3d 1255 (2008), cert dismissed, ___ U.S. ___, 129 S.Ct. 1436, 173 L.Ed.2d 346 (2009) (explaining in greater detail defendant's conduct). Beginning in the mid-1950s (when reports first emerged about a link between smoking and lung cancer and other deadly diseases) and enduring throughout decedent's smoking life, defendant conspired with other cigarette manufacturers to wage a massive disinformation campaign designed to create the perception of uncertainty about the health risks of cigarettes, when in fact secret research by those same tobacco companies confirmed the adverse health consequences of smoking.
Plaintiff offered expert testimony on the substantial harm that that pattern of fraud and deception had imposed on others not party to the litigation in this case. Each year, in the United States, there are approximately 400,000 deaths attributable to cigarette smoking, and approximately 15 million Americans have died from cigarette smoking in the last century.
At the close of evidence, the trial court gave the jury the following instruction on punitive damages, tailored on Uniform Civil Jury Instruction (UCJI) 75.05A (Oct 1997) (the uniform jury instruction):
"To recover punitive damages, [plaintiff] must show by clear and convincing evidence that defendant Philip Morris
"has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety, and welfare of others[.]
"Clear and convincing evidence is evidence that makes you believe that the truth of the claim is highly probable.
"If you decide that the defendant has acted as claimed by the plaintiff, you have the discretion to award punitive damages.
"Punitive damages, if any, shall be determined and awarded based on the following:
"(1) The likelihood at the time that serious harm would arise from the defendant's misconduct;
"(2) The degree of the defendant's awareness of that likelihood;
"(3) The profitability of the defendant's misconduct;
"(4) The duration of the misconduct and any concealment of it;
"(5) The attitude and conduct of the defendant upon discovery of the misconduct;
"(6) The financial condition of the defendant; and
"(7) The total deterrent effect of other punishment imposed on the defendant as a result of the misconduct, including, but not limited to, punitive damages awards to persons in situations similar to the claimant's and the severity of criminal penalties to which the defendant has been or may be subjected.
"The amount of punitive damages you award may not exceed $300,000,000.00."
At the time of trial, the United States Supreme Court had not yet indicated that the constitution required any particular instruction on punitive damages. Indeed, the leading punitive damages cases at that time had arisen in the context of post-verdict judicial review of jury awards. See, e.g., Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (conducting post-verdict analysis of jury award); Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 7, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (same); see also BMW of North America, Inc. v. Gore, 517 U.S. 559, 586, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (leaving to states to determine in the first instance whether adjustment to "grossly excessive" award should be made by independent appellate review or remanded for new trial on punitive damages). Consistent with those cases, the uniform jury instruction *672 informed jurors of the factors that Oregon law permitted them to consider in awarding punitive damages. If a jury returned a verdict for any amount of punitive damages, then a defendant could seek judicial review on the constitutionality of the amount of that award. See Parrott v. Carr Chevrolet, Inc., 331 Or. 537, 555, 17 P.3d 473 (2001) (federal constitution requires the availability of post-verdict judicial adjustment of grossly excessive punitive damages awards).
Defendant acknowledged that the uniform jury instruction correctly stated Oregon law, and that, as a descriptive matter, courts in Oregon and elsewhere had tended to reserve for themselves the gate-keeping function of ensuring that punitive damages awards were constitutional. However, defendant argued that the uniform jury instruction was incomplete. In order to be an adequate instruction, defendant asserted, the instruction also must inform the jurors of the limits that the constitution places on the jury's discretion to award punitive damages. Specifically, defendant asserted that the uniform jury instruction was incomplete because it "allow[ed] the finder of fact to award or calculate punitive damages based on harms to persons other than Michelle Schwarz."
To rectify the problem it perceived, defendant offered its proposed instruction 41, which provided:
"You are not to impose punishment for harms suffered by persons other than the plaintiff before you."
As an alternative to proposed instruction 41, defendant also offered its proposed instruction 42, which provided:
"You are not to punish a defendant for the impact of its conduct on individuals in other states."
When defendant advanced its request for those instructions, it stated that it was
"incorporat[ing] the argument [it] already made [when objecting to the uniform jury instruction] that Philip Morris can't be punished in this case based on harms to others. Harms to others can be considered in terms of the reprehensibility of Philip Morris's conduct, but we cannot be punished for harms suffered by people who, themselves, could sue because inevitably it would result in over punishment."
Without supplementation to the uniform jury instruction, defendant contended, "we're really inviting the jurors to make an unconstitutional ruling and only have the court be a check on it."
The trial court declined to give defendant's requested instructions, in part on the basis that "when I tell them who the plaintiff is and who the defendant is, I think the jury is going to limit their findings to those two entities." The trial court also overruled defendant's objection to the adequacy of the uniform jury instruction, reasoning that instructing the jury on the factors that enter into a constitutional determination "may confuse or mislead them." Instead, the court stated that the constitutionality of a punitive damages award "is more of a legal determination" for the court to make after a jury has returned a verdict.
In a special verdict, the jury found defendant liable on all three claims for relief asserted. However, on the negligence and strict product liability claims, the jury apportioned 49 percent of the fault to plaintiff. The jury awarded $118,514.22 in economic damages, $50,000 in noneconomic damages, and punitive damages on each of plaintiff's three claims: $25 million on the negligence claim, $10 million on the strict product liability claim, and $115 million on the fraud claim, for a total punitive damages award of $150 million. Defendant made a post-verdict motion to reduce the punitive damages award. The trial court ruled that that award was "grossly excessive" and, without apportionment among the claims, reduced the punitive damages award to a total of $100 million.
Defendant appealed and plaintiff cross-appealed. Defendant asserted 21 assignments of error. Relevant to the issue before this court, defendant assigned error to the trial court's refusal to include defendant's proffered instructions.[2] Plaintiff sought reinstatement *673 of the jury's total punitive damages award.
A divided Court of Appeals sitting en banc vacated the punitive damages award. The majority held that the trial court had erred in refusing to give defendant's requested instruction that "[y]ou are not to punish a defendant for the impact of its conduct on individuals in other states." Schwarz, 206 Or.App. at 57, 135 P.3d 409. The majority relied primarily on a Supreme Court case that was decided after the trial of this case and during the pendency of appeal, State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). In Campbell, the Court stated that due process dictates that
"[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis[.]"
Id. at 423, 123 S.Ct. 1513. In Campbell, the Court for the first time definitively stated that a trial court was required, upon request, to instruct the jury on at least some aspects of the limits that due process places on punitive damages awards. Id. at 422, 123 S.Ct. 1513.
The Court of Appeals divided over whether the instruction that defendant had proffered accurately stated the law. Schwarz, 206 Or. App. at 48, 135 P.3d 409. See Hernandez v. Barbo Machinery Co., 327 Or. 99, 106, 957 P.2d 147 (1998) (party is entitled to jury instructions on its theory of case only if proffered instructions are accurate). The majority held that defendant's proposed instruction 42 met that standard and accurately informed the jury that it could not punish defendant for the impact of its conduct on individuals in other states. Schwarz, 206 Or.App. at 50, 135 P.3d 409. The majority stated that "no party under Oregon law is required to request a jury instruction that advances the use of evidence in a way that benefits the party's adversary." Id. at 49, 135 P.3d 409. The dissent contended that it was defendant's burden to propose a jury instruction that was not misleading. In the dissent's view, defendant's proposed instructions "would have misled the jury into thinking that it could not consider defendant's out-of-state conduct for any purpose." Id. at 85-86, 135 P.3d 409 (Rosenblum, J., concurring in part, dissenting in part) (emphasis in original). The court vacated the punitive damages award and remanded the case for a new trial on punitive damages. Id. at 67, 135 P.3d 409. The court's disposition rendered plaintiff's cross-appeal moot. Id.

II. DEFENDANT'S CLAIM OF INSTRUCTIONAL ERROR
In this court, defendant asserts two interrelated objections to the trial court's rulings on jury instructions: that the court erred in failing to give either of its proffered instructions 41 and 42, and that the court erred in giving the uniform jury instruction without informing the jury of the purposes for which the jury could consider harm to nonparties.[3] Oregon law recognizes
"two different types of error respecting jury instructions: (1) error in the failure to give a proposed jury instruction, and (2) error in the jury instructions that actually were given. See Bennett v. Farmers Ins. Co., 332 Or. 138, 152-53, 26 P.3d 785 (2001) (so indicating)."
Williams v. Philip Morris Inc., 344 Or. 45, 55-56, 176 P.3d 1255 (2008) (Williams III).

A. Refusal to Give Defendant's Proposed Instructions

With respect to the first of the errors asserted by defendanterror in the failure to give its proposed jury instructionsOregon *674 law entitles a party to have a proffered instruction given only if that instruction correctly states the law and engages the pleadings and the evidence. Hernandez, 327 Or. at 106, 957 P.2d 147. In Williams II, decided after the decision of the trial court and the Court of Appeals, the Supreme Court concluded that "a jury may not * * * use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties" to the litigation. 549 U.S. at 355, 127 S.Ct. 1057. However, the Court held that evidence of harms to others could be appropriate and relevant to determining the reprehensibility of defendant's conduct. Id. The Court went on to explain:
"How can we know whether a jury, in taking account of harm caused others under the rubric of reprehensibility, also seeks to punish the defendant for having caused injury to others? Our answer is that state courts cannot authorize procedures that create an unreasonable and unnecessary risk of any such confusion occurring. In particular, we believe that where the risk of that misunderstanding is a significant onebecause, for instance, of the sort of evidence that was introduced at trial or the kinds of argument the plaintiff made to the jurya court, upon request, must protect against that risk. Although the States have some flexibility to determine what kind of procedures they will implement, federal constitutional law obligates them to provide some form of protection in appropriate cases."
Id. at 357, 127 S.Ct. 1057 (emphases in original). Defendant argues that, by virtue of its request, the trial court was required to eliminate the risk of jury misunderstanding and give its proposed instructions, which correctly stated the law.
Plaintiff contends that the instructions that defendant proffered were inaccurate, incomplete, and misleading because the instructions not to "punish" defendant for harms suffered by nonparties or for the impact of its conduct on nonparties, without saying more, directed the jury not to use evidence of such harm or impact for any purpose. Plaintiff asserts that a complete, accurate, and correct instruction "would have told the jury that the evidence [of harm to others] was relevant to reprehensibility, but it could not be used to increase the amount of punitive damages in order to punish directly for harm to others." To illustrate that point, plaintiff notes that, since the Supreme Court's decision in Williams II, the Oregon State Bar Committee on Uniform Civil Jury Instructions has developed a uniform civil jury instruction that captures the Court's ruling. UCJI 75.02B (Nov 2009) states:
"Evidence has been received of harm suffered by persons other than the plaintiff as a result of the defendant's conduct. This evidence may be considered in evaluating the reprehensibility of defendant's conduct. However, you may not award punitive damages to punish the defendant for harm caused to persons other than the plaintiff."[4]
Defendant argues that each of the instructions that it proffered were accurate statements of the law and that, particularly when considered in the context of the uniform jury instruction that the trial court gave, its proffered instructions communicated to the jury the distinction between the proper and improper use of evidence of harm to others. Defendant notes that the uniform jury instruction told the jury that it had *675 discretion to award punitive damages if it found that defendant
"ha[d] shown a reckless and outrageous indifference to a highly unreasonable risk of harm and ha[d] acted with a conscious indifference to the health, safety, and welfare of others."
(Emphasis added.) Thus, defendant asserts, the court did instruct the jury that it could consider harm to others in its analysis of the reprehensibility of defendant's conduct.
As noted, a proposed instruction must be complete and accurate in all respects. Hernandez, 327 Or. at 106, 957 P.2d 147. That standard must be understood in the context of the general purpose of jury instructions, which is to "reduce the relevant law to terms readily grasped by the jury without doing violence to the applicable legal rule." Rogers v. Meridian Park Hospital, 307 Or. 612, 616, 772 P.2d 929 (1989). For appellate courts reviewing claims of instructional error, the touchstones are legal accuracy and clarity:
"The parties to any jury case are entitled to have the jury instructed in the law which governs the case in plain, clear, simple language. The objective of the mold, framework and language of the instructions should be to enlighten and to acquaint the jury with the applicable law. Everything which is reasonably capable of confusing or misleading the jury should be avoided. Instructions which mislead or confuse are ground for a reversal or a new trial."
Williams et al. v. Portland Gen. Elec., 195 Or. 597, 610, 247 P.2d 494 (1952).
The distinction that the Supreme Court has created between constitutionally permissible and impermissible uses of evidence of harm to others is a fine one that easily may be lost. See Williams II, 549 U.S. at 360, 127 S.Ct. 1057 (Stevens, J., dissenting) ("This nuance eludes me."); White v. Ford Motor Co., 312 F.3d 998, 1016-17 n. 69 (9th Cir.2002) (the distinction recognized by the Supreme Court "might be so gossamer as to be difficult for a jury to apply"). Although it is possible that a jury could glean that distinction from defendant's proposed instructions in combination with the uniform jury instruction, it is not probable. Defendant's proposed instructions expressly directed the jury to refrain from using evidence of harm to nonlitigants to "punish" defendant. The uniform jury instruction was not similarly clear in permitting the jury to use that evidence in assessing the reprehensibility of defendant's conduct and arriving at a punitive damages award. When the law draws a line between the proper and improper use of evidence, a jury instruction must be equally explicit in describing what falls on each side of that line.
It is of course true that, under Oregon law, no party is required to request a jury instruction that advances the other party's theory of the case. So, for instance, a plaintiff's proposed instructions would not be incomplete simply because they failed to inform the jury that the defendant had asserted an affirmative defense. But the Court of Appeals overstated that principle when it observed that no party is required to request a jury instruction that "advances the use of evidence in a way that benefits the party's adversary." Schwarz, 206 Or.App. at 49, 135 P.3d 409. Where an instruction is necessary to inform the jury of the parameters that it must apply in considering particular evidence, an instruction that does not completely and accurately describe those parameters is erroneous and objectionable, even if the omitted portion of those parameters would benefit the opposing party. We hold that the trial court did not err in refusing to give the instructions that defendant proffered.

B. Error in Giving Uniform Jury Instruction

We next consider defendant's argument that the trial court erred in giving the uniform jury instruction. As a threshold matter, plaintiff argues that the rules of appellate procedure preclude this court from reaching that argument.
ORAP 9.20(2) defines the scope of this court's discretion to consider questions on review. It provides, in part, that unless the court otherwise limits the questions before it on review, "the questions before the Supreme Court include all questions properly *676 before the Court of Appeals that the petition or the response claims were erroneously decided by that court." Plaintiff petitioned for review in this court, and defendant submitted a response to the petition. In that response, defendant did not present the issue of the accuracy of the uniform jury instruction. Therefore, plaintiff contends, defendant abandoned the argument it now urges.
Defendant acknowledges that it did not include a question about the adequacy of the uniform jury instruction in the eight supplemental questions that it listed in its response to plaintiff's petition for review. Nonetheless, defendant asserts, ORAP 9.20(2) recognizes additional authority for this court to "consider other issues that were before the Court of Appeals." In this case, the question whether defendant took the necessary steps to place the accuracy of the uniform jury instruction properly before the Court of Appeals is a close one.
Although the record plainly reveals that, at the trial court level, defendant objected and took proper exception to the uniform jury instruction, defendant's opening brief to the Court of Appeals did not raise the uniform jury instruction issue as a discrete claim. In that brief, defendant asserted as its sixteenth assignment of error:
"The trial court erred by instructing the jury solely on the Oregon statutory factors for assessing punitive damages without also providing defendant's proposed instructions on constitutional limits."
In the preservation section of its opening brief, defendant noted that it had objected in the trial court to the uniform jury instruction and, in the argument section, defendant asserted that, as a result of omissions in that instruction, the court had given the jury "a roadmap to error." Plaintiff understood defendant's sixteenth assignment of error to assert that the trial court had erred in failing to give defendant's proposed instructions 41 and 42. As to the giving of the uniform jury instruction, plaintiff, in his answering brief, argued that defendant "ha[d] waived any challenge to this instruction." In a reply brief, defendant disputed that characterization and asserted that "[t]he trial court also erred in giving instructions [on punitive damages] that were affirmatively misleading."
In Dunlap v. Dickson, 307 Or. 175, 180 n. 4, 765 P.2d 203 (1988), this court indicated that it would exercise its discretion to reach an issue presented to the Court of Appeals (1) when there was a "close connection" between the issues, and (2) "to avoid unnecessary technicality when we may do so and doing so resolves issues fairly raised below."[5] Those conditions also are present here and militate for review. Although defendant's statement of its sixteenth assignment of error did not present a clear objection to the trial court's giving of the uniform jury instruction, defendant's briefs did disclose its intent to assert that error. More importantly, both the court's failure to give defendant's proposed instruction and its giving of the uniform jury instruction raised precisely the same legal issue: whether the trial court correctly instructed the jury on the use of evidence of harm to nonparties. Having accepted review of the decision of the Court of Appeals and having decided that defendant's proffered instructions were incomplete and thereby inaccurate, we think it important also to decide the accuracy of the instructions that the jury did receive.
Turning to the merits of defendant's argument, we observe that, when this case was tried, neither Campbell nor Williams II had been decided. We therefore understand the reason for the trial court's failure to instruct the jury on the law regarding evidence of harm to nonparties. Nevertheless, we must acknowledge that omission and the fact that the trial court did, in giving the uniform jury instruction, permit the jury to consider evidence of harm to nonparties in assessing punitive damages. In giving the uniform jury instruction, the court informed the jury:
"To recover punitive damages, [plaintiff] must show by clear and convincing evidence that defendant Philip Morris

*677 "has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety, and welfare of others.
"* * * * *
"Punitive damages, if any, shall be determined and awarded based on the following:
"(1) The likelihood at the time that serious harm would arise from the defendant's misconduct;
"(2) The degree of the defendant's awareness of that likelihood[.]"
Plaintiff contends that the jury would have understood from that instruction the fine distinction that the law makes; namely, that evidence of harm to others may be used only in the assessment of reprehensibility and not to impose direct punishment for harm to nonparties. Plaintiff asserts that the other general instructions that the court gave focused the jury's attention on damage to the named plaintiff and prevented a misunderstanding of the punitive damages instruction that the court gave. We do not agree. The jury could have understood the uniform jury instruction to permit it to use evidence of harm to others in arriving at its punitive damages verdict and, without an explicit statement of the impermissible use of that evidence, such as that included in UCJI 75.02B (Nov 2009), the instruction was incomplete and unclear. The trial court erred in giving the uniform instruction.

III. REMEDY
The question of appropriate remedy remains. Plaintiff argues that, notwithstanding any error in jury instruction, this court may affirm the jury's verdict if, upon "careful appellate weighing," that verdict accords with the limits that substantive due process places on the punitive damages award. See Clemons v. Mississippi, 494 U.S. 738, 748, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (where the jury was erroneously instructed on an aggravating factor to be considered in sentencing, "careful appellate weighing" of whether the evidence supported the jury verdict was sufficient to meet constitutional objections). Plaintiff further indicates that, with respect to punitive damages awards, the Supreme Court has been careful to preserve "some flexibility" in the procedures that states craft to give effect to the constitutional protections that due process provides. See Williams II, 549 U.S. at 357-58, 127 S.Ct. 1057 (stating that Oregon Supreme Court's application of the wrong constitutional standard "may lead to the need for a new trial, or a change in the level of the punitive damages award") (emphases added). See also Campbell, 538 U.S. at 429, 123 S.Ct. 1513 ("proper calculation of punitive damages * * * should be resolved, in the first instance, by the Utah courts"); BMW of North America v. Gore, 517 U.S. 559, 586, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("Whether the appropriate remedy requires a new trial or merely an independent determination by the Alabama Supreme Court of the award necessary to vindicate the economic interests of Alabama consumers is a matter that should be addressed by the state court in the first instance.").
Plaintiff's argument has its draw. However, the Oregon Constitution makes plain that this court does not have the authority in the first instance to make its own factual determination of the appropriate punitive damages award that should be imposed in light of defendant's conduct and the harm that it caused decedent: "In all civil cases the right of Trial by Jury shall remain inviolate." Or. Const., Art. I, § 17. This court has interpreted that provision to create a right for litigants to have "a jury determine all issues of fact[.]" Lakin v. Senco Products, Inc., 329 Or. 62, 69, 987 P.2d 463 (1999) (internal quotation marks omitted). The Supreme Court has thrust upon state courts the role of determining whether a jury award of punitive damages exceeds the outer limits that substantive due process allows, but it is still the constitutional role of the jury to decide all facts, including those necessary to assess punitive damages in the first instance. We cannot decide the damages that a correctly instructed jury would award, and we therefore must remand this case for a jury's decision.
*678 As a final matter, defendant asserts that common law and state constitutional law require a retrial of the entire case on remand. Defendant points to a case in which this court held that, as a matter of general fairness, "[i]n the ordinary two-party personal-injury case" the same jury that determined fault should consider the question of damages. Maxwell v. Port. Terminal R.R. Co., 253 Or. 573, 577, 456 P.2d 484 (1969). However, in instances when this court has vacated a punitive damages award because it could not "determine the standard actually used by the jury in arriving at its verdict for punitive damages," it has remanded for the limited purpose of retrial on punitive damages only. Wolf v. Nordstrom, 291 Or. 828, 835-36, 637 P.2d 1280 (1981). See also Weiss v. Northwest Accept. Corp., 274 Or. 343, 358, 546 P.2d 1065 (1976) (remanding for a new trial on punitive damages only).[6] We adopt the same disposition in this case.
In summary, we hold that the trial court erred in its instructions to the jury on punitive damages. We vacate the punitive damages award and remand this case to the trial court for a new trial limited to the question of punitive damages.
The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.
NOTES
[**] Gillette, J., did not participate in the decision of this case. Linder, J., did not participate in the consideration or decision of this case.
[1] The Fourteenth Amendment to the United States Constitution provides, in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law[.]"
[2] Defendant's other assignments of error covered numerous aspects of the trial, including:

"challenges to the denial of motions for directed verdicts for defendant on plaintiff's claims, challenges to the trial court's decision to give or not to give certain jury instructions regarding those claims, [and] a challenge to the court's failure to grant a mistrial[.]"
Schwarz, 206 Or.App. at 26, 135 P.3d 409. The Court of Appeals unanimously rejected all of defendant's assignments of error except the one that addressed the jury instructions pertaining to the constitutionality of punitive damages awards.
[3] We decline to reach the other questions that defendant listed in its response to plaintiff's petition for review and briefed in this court.
[4] The Committee on Uniform Civil Jury Instructions also has developed a uniform instruction on the proper use of evidence of a defendant's out-of-state conduct in the imposition of punitive damages. UCJI 75.02A (Nov 2009) states:

"Evidence has been received of conduct by the defendant occurring outside Oregon. This evidence may be considered in evaluating the reprehensibility of the defendant's conduct in Oregon if the out-of-state conduct is reasonably related to the conduct of the defendant directed toward the plaintiff in Oregon.
"You may not award punitive damages against the defendant based on evidence of out-of-state conduct that was lawful in the state where it occurred. Further, when considering reprehensibility, you may not consider conduct of the defendant, wherever it might have occurred, that is not similar to the conduct upon which you found the defendant liable to the plaintiff."
[5] The court cited former ORAP 10.15(2) (1988) as a description of its discretion to reach the issue. That rule was nearly identical to the current ORAP 9.20(2).
[6] Defendant also argues, citing Clark v. Strain et al., 212 Or. 357, 364, 319 P.2d 940 (1958), that "the minimum number of jurors required for a valid verdict must be the same jurors voting on each separate issue demanding resolution." Clark involved the unusual circumstance in which one group of nine jurors found that the defendant was liable for damages, but one member of the majority refused to agree on the level of damages. Id. at 360-63, 319 P.2d 940. The jury broke the stalemate by cobbling a different group of nine jurors who concurred on damages. Id. Defendant contends that the constitutional provision on which the court in Clark relied, Article VII (Amended), section 5(7), requires a complete new trial here. That provision requires that "[i]n civil cases three-fourths of the jury may render a verdict." Again, defendant raises concerns that this case does not present. We remand this case for a new trial on a limited issue, and three-fourths of the jury that considers that issue is sufficient to render a verdict on that issue.