Argued and submitted March 18, affirmed December 31, 2014, petition for review denied April 23, 2015 (357 Or 164)

In the Matter of the Estate of
Jesse D. Williams, Deceased.

Mayola WILLIAMS,
in her capacity as Personal Representative of
the Estate of Jesse D. Williams,
*Appellant,*

*v.*

William A. GAYLORD;
Gaylord Eyerman Bradley, P.C.; Raymond F. Thomas;
Swanson, Thomas & Coon; James S. Coon;
Charles S. Tauman; Charles S. Tauman, P.C.;
Richard A. Daynard; Clifford E. Douglas;
Maureen Leonard; Kathryn H. Clarke;
and Center for Constitutional Litigation,
*Respondents.*

Multnomah County Circuit Court
970590843; A153249

341 P3d 202

John W. Stephens argued the cause for appellant. With him on the briefs was Esler Stephens & Buckley LLP.

James R. Cartwright argued the cause for respondents. With him on the brief was Cartwright Whitman Baer, PC.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

Hadlock, J., dissenting.

## SERCOMBE, P. J.

Mayola Williams, as personal representative of the Estate of Jesse D. Williams (the estate), appeals the trial court's limited judgment approving a payment of attorney fees and costs to a group of attorneys (the attorneys) who provided representation to the estate. The estate asserts that the trial court incorrectly interpreted ORS 31.735(1) and, as a result of that erroneous interpretation, granted the attorneys' motion for summary judgment and entered the limited judgment approving payment of the requested fees.[1] In particular, the estate received a sizable punitive damages award in underlying litigation. Although the estate's share of the punitive damages award was limited by ORS 31.735(1),[2] as a result of a settlement with the state and work by the attorneys assisting the state in secondary litigation, as described below, the estate received an additional recovery. The estate now asserts that the attorney fee cap contained in ORS 31.735(1)(a) limits the amount of fees the attorneys may receive from that additional recovery. The trial court concluded that ORS 31.735(1)(a) did not limit the amount of fees from that additional recovery. For

---

[1] It is undisputed that *former* ORS 18.540 (1995), *renumbered as* ORS 31.735 (2003), applies in this case. In particular, the applicable statutory text is contained in the version of the statute "in effect from 1995 to 2011." The estate, in its brief, primarily refers to the statute as ORS 31.735; the attorneys cite the statute as ORS 18.540. For convenience, we refer to the statute in this opinion by its current numbering. However, we also note that ORS 31.735(1) was amended in 2011. *See* Or Laws 2011, ch 689, §§ 1, 3; Or Laws 2011, ch 597, §§ 311, 332. Those amendments are not applicable to this case, and all references to ORS 31.735 are to the version of the statutory text in effect between 1995 and 2011, prior to the 2011 amendments.

[2] ORS 31.735(1) provides:

"(1) Upon the entry of a verdict including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled pursuant to paragraph (b) of this subsection, and the punitive damage portion of an award shall be allocated as follows:

"(a) Forty percent shall be paid to the prevailing party. The attorney for the prevailing party shall be paid out of the amount allocated under this paragraph, in the amount agreed upon between the attorney and the prevailing party. However, in no event may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party.

"(b) Sixty percent shall be paid to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section to be used for the purposes set forth in ORS chapter 147."

the reasons set forth below, we affirm the judgment of the trial court.

The undisputed background facts of this case are set forth in the trial court's judgment.[3] In 1997, the estate entered into a contingency fee agreement with the attorneys pursuant to which the attorneys would represent the estate in an action against Philip Morris for the smoking-related illness and death of Jesse Williams.[4] Pursuant to the agreement, the attorneys would receive "forty (40%) percent of the gross amount of money collected, whether this money is collected by settlement or by a successful lawsuit and judgment."

The estate filed an action against Philip Morris and, in 1999, following a trial, the jury returned a verdict in favor of the estate. It awarded the estate economic and noneconomic damages as well as $79.5 million in punitive damages. Approximately a decade of subsequent appeals, primarily involving the punitive damages award, ensued.[5] Ultimately, however, the judgment was affirmed and an appellate judgment issued. *See Williams v. Philip Morris*, 344 Or 45, 176 P3d 1255 (2008), *cert dismissed as improvidently granted*, 556 US 178 (2009).

Under Oregon's split recovery statute, 60 percent of the jury's punitive damages award was allocated to the state. ORS 31.735(1). However, after the jury returned its verdict, Philip Morris notified the state that it believed that the state had released Philip Morris from any obligation to pay the state its 60 percent share of the punitive damages award because, in 1998, the state—along with 45 other states—had entered into a Master Settlement Agreement

---

[3] The matter was heard by a reference judge whose final report was attached to and incorporated in the limited judgment approving payment of attorney fees and costs.

[4] The agreement provided that the attorneys would represent the estate in an action against "one or more manufacturers or sellers of tobacco products."

[5] *Williams v. Philip Morris*, 182 Or App 44, 48 P3d 824, *adh'd to on recons*, 183 Or App 192, 51 P3d 670 (2002), *rev den*, 335 Or 142, *vac'd and rem'd*, 540 US 801 (2003), *on remand*, 193 Or App 527, 92 P3d 126 (2004), *aff'd*, 340 Or 35, 127 P3d 1165 (2006), *vac'd and rem'd*, 549 US 346, 127 S Ct 1057, 166 L Ed 2d 940 (2007), *on remand*, 344 Or 45, 176 P3d 1255 (2008), *cert dismissed as improvidently granted*, 556 US 178 (2009).

(MSA) with Philip Morris and other major tobacco companies. *See Williams v. RJ Reynolds Tobacco Company*, 351 Or 368, 372-73, 271 P3d 103 (2011). Accordingly, the state filed an action seeking a declaration that it was entitled to its 60 percent share of the punitive damages award. The trial court stayed the declaratory judgment proceedings pending resolution of the appeals relating to the validity of the punitive damages award.

While the punitive damages case was on appeal, the state and the attorneys, on behalf of the estate, conferred. In the attorneys' view, both the estate and the attorneys themselves had valid grounds to challenge the state's entitlement to 60 percent of the punitive damages. However, after discussions, the state sought to settle any potential constitutional claims that the estate or the attorneys might raise challenging the state's entitlement to a share of the punitive damages award.[6] Ultimately, the parties agreed that they would release all claims against each other and the estate would assist the state in its secondary litigation with Philip Morris. In return, the estate and its attorneys would receive some of the state's share of the punitive damages award.

In particular, in 2004, the state and the estate, represented by the attorneys, entered into an agreement. The agreement provided that the state claimed an interest in the punitive damages awarded in the *Williams* litigation under ORS 31.735 and that the estate claimed that the state's

---

[6] The attorneys presented a deal to the estate's personal representative (Williams) under which the estate would intervene in the declaratory action and would settle any potential constitutional challenges to the state's entitlement to a share of punitive damages. In return, any amounts recovered by the state or the estate in litigation against Philip Morris to recover the state's 60 percent share would be divided equally between the attorneys, the estate, and the state. Williams objected to the proposal that the estate and attorneys would receive equal shares of any recovery in the declaratory judgment action, asserting that the estate should receive a larger share. As a result, the attorneys agreed to proceed as provided in the original contingency fee agreement, under which they would be paid 40 percent of any amount the estate might receive as a result of the declaratory judgment proceedings. In a letter dated October 16, 2003, attorney William Gaylord wrote to Williams and confirmed that the attorneys would continue under the 40 percent contingency fee agreement and asked Williams to advise him immediately if she "ha[d] any problem" with that. In addition, he advised her "of the importance of securing independent legal advice," noting that, in discussions of "the divisions of proceeds, we, as your attorneys, may have interests that conflict with those of family members."

taking of punitive damages (and the attorneys' contingent fees thereon) violated the state and federal constitutions and, "in any event the attorneys representing the Estate herein are entitled to reasonable contingent fees from the State for the value of their services, their time and their money risked in this matter[.]" To "resolve th[ose] legal differences," they agreed that the estate would intervene in the declaratory judgment action and the estate and the state would cooperate in that action to ensure that Philip Morris was required to pay the entire amount of punitive damages awarded in the underlying action for damages. *See RJ Reynolds Tobacco Company*, 351 Or at 374 n 7. Under the agreement,

> "[a]ny amount recovered by the State of Oregon or by the Williams Estate or both in [the declaratory judgment action], whether by litigation to final judgment, by settlement, or by any other means, shall be paid 55% to the State of Oregon and 45% to the Williams Estate and its attorneys. In the event that Philip Morris pays 100% of the final appellate judgment in *Williams v. Philip Morris* with or without litigating [the declaratory judgment action], the State of Oregon would receive 33.33% of the total punitive damages recovered, and the Williams Estate and its attorneys would receive 66.67% of the total punitive damages recovered."

The agreement stated that it concerned "only allocation of recovered punitive damages as between the State of Oregon on one hand and the Estate and its attorneys on the other hand." The agreement was intended to have "no effect on the division between the Estate and its attorneys on any amounts recovered."

After the punitive damages award was affirmed in 2009, Philip Morris paid the estate "over $61 million in full satisfaction of the award of economic and noneconomic damages, and in full satisfaction of the estate's interest in 40 percent of the punitive damages award allocated to the Williams estate under ORS 31.735, plus costs and interest on those awards." *Id.* at 374. It did not, however, pay out the other 60 percent of the punitive damages award. The trial court then lifted the stay in the declaratory judgment action and recommenced proceedings to "decide the legal questions

surrounding entitlement to the punitive damages award: *viz.*, whether by signing the MSA, the state released its allocated share in the *Williams* punitive damages award and, if so, what should happen to that money." *Id.* That case, in which the attorneys participated, ultimately made its way to the Oregon Supreme Court, which, in 2011, decided that the state did not release its right to 60 percent of the punitive damages award in *Williams* when it executed the MSA. *Id.* at 388.

Eventually, in 2012, Philip Morris paid more than $102 million to the state, representing 60 percent of the punitive damages award plus interest. Thereafter, pursuant to the 2004 agreement, the state paid just over $46 million of that amount to the estate. Under the terms of the fee agreement, approximately $18.4 million of that money would have been paid by the estate in fees to the attorneys, who filed petitions for attorney fees seeking that amount in the probate court. The court awarded the attorneys the fees to which the parties agreed the attorneys were entitled (approximately $8.4 million). However, as to the approximately $10 million remaining that the attorneys asserted was due under the fee agreement, the estate objected to the attorneys' petition, asserting that the fees to the attorneys could not exceed 20 percent of the total punitive damages award.

The parties filed cross-motions for summary judgment with respect to that issue. The estate contended that "ORS 31.735(1)(a) (1995) caps at 20% the amount an attorney for the prevailing party can receive of a total punitive damages award and that the 40% contractual provision is subordinate to that statutory cap." (Internal quotation marks omitted.) The attorneys, for their part, contended that that statute's 20 percent limitation "applies in circumstances where the prevailing party receives only the amount allocated to the prevailing party under [ORS 31.735(1)] and not, as here, where an agreement made outside the statute results in the state paying to the prevailing party a share of the state's statutory allocation." (Internal quotation marks omitted.)

After a hearing, the court granted the attorneys' motion for summary judgment and denied the estate's. The

court concluded that, as it interpreted ORS 31.735(1), that statute did not prevent payment of the attorney fees due under the contingency fee agreement. In the court's view,

> "the three sentences comprising ORS 31.735(1)(a) relate to the payment of attorney fees by the prevailing party for work done by the attorney to win a punitive damages award at trial. The second sentence of section (1)(a) requires the prevailing party to pay the attorney out of the prevailing party's 40% statutory share of the punitive damages award 'allocated under this paragraph.' The cap in the third sentence of section 1(a) limits only how much the prevailing party can pay the attorney out of the amount allocated under that paragraph: no more than 20% of the amount awarded as punitive damages. The third sentence modifies the second sentence. The third sentence does not stand alone. The 20% cap in the third sentence is inapplicable in the circumstances here, where the state paid the Estate a substantial portion of the state's 60% statutory share of punitive damages award under section (1)(b) in consideration of the 2004 agreement between the state and the Estate. It follows that the third sentence of ORS 31.735(1)(a) does not provide a legal basis for granting the Estate's motion for summary judgment in this matter nor for denying the Attorneys' motion for summary judgment."

(Underscoring in original.) Accordingly, it granted the attorneys' fee petition and, in its limited judgment, the court approved payment of the approximately $10 million at issue to the attorneys.

On appeal, the estate contends that the trial court erred in granting the attorneys' motion for summary judgment and denying the estate's. *See Farmers Ins. Exchange v. Crutchfield*, 200 Or App 146, 152-53, 113 P3d 972, *rev den*, 339 Or 609 (2005) ("When there are cross-motions for summary judgment and granting of one and denial of the other are both assigned as error, both are subject to review."). Specifically, the estate asserts that the court committed legal error when it concluded that the cap on attorney fees contained in ORS 31.735(1)(a) did not apply to the fees at issue here. The attorneys respond that the trial court correctly granted their summary judgment motion because, as a matter of law, the 20 percent fee limitation in ORS 31.735(1)(a) "applies only to attorney fees paid out of the

40 [percent] prevailing party allocation provided in that paragraph." (Boldface omitted.) Where, as here, there are no issues of material fact, we review the trial court's summary judgment ruling for errors of law. *Hazell v. Brown*, 238 Or App 487, 495, 242 P3d 743 (2010), *aff'd*, 352 Or 455, 287 P3d 1079 (2012).

The issue in this case concerns a question of statutory interpretation; that is, whether the cap on attorney fees contained in ORS 31.735(1)(a) applies to the fees in question here. In resolving that question, we attempt to discern the legislature's intent by examining the statute's text and context, along with any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In conducting that analysis, we give words of common usage their "plain, natural and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

Our starting point is the text of ORS 31.735 which, as noted, provides, in relevant part:

"(1) Upon the entry of a verdict including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled pursuant to paragraph (b) of this subsection, and the punitive damages portion of an award shall be allocated as follows:

"(a) Forty percent shall be paid to the prevailing party. The attorney for the prevailing party shall be paid out of the amount allocated under this paragraph, in the amount agreed upon between the attorney and the prevailing party. However, in no event may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party.

"(b) Sixty percent shall be paid to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section to be used for the purposes set forth in ORS chapter 147."

Thus, the statute provides that, in any case where the jury awards punitive damages, the state becomes a judgment creditor "upon entry of the verdict" as to the portion of the punitive damages "award to which the Criminal Injuries

Compensation Account is entitled." *See RJ Reynolds Tobacco Company*, 351 Or at 381 ("If a jury awards punitive damages, the state becomes a judgment creditor on entry of the verdict as to the 'portion of the [punitive damages] award to which the Criminal Injuries Compensation Account is entitled' under the statute." (Brackets in original.)). The statute then provides that the punitive damages portion of the award must be allocated as set forth in subsections (1)(a) and (1)(b) of the statutes. *See Webster's Third New Int'l Dictionary* 2085 (unabridged ed 2002) ("shall" is "used in laws, regulations, or directives to express what is mandatory"); *RJ Reynolds Tobacco Company*, 351 Or at 381 (the "judgment of the court must allocate shares of any punitive damage award according to the percentages set out in ORS 31.735(1)(a) and (b)"); *see also Webster's* at 57 (to "allocate" means "to give (a share of money, land, or responsibility) to a person," "to distribute or to divide and distribute," "to apportion and distribute").

ORS 31.735(1)(a), in its first sentence, requires that 40 percent of a punitive damages award be paid to the prevailing party. In its second sentence, it mandates that the attorney for the prevailing party be paid out of the prevailing party's (40 percent) share of the damages "in the amount agreed between the attorney and the prevailing party." Nonetheless, the final sentence of subsection (1)(a) provides that, "[h]owever, in no event may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party."

The estate points to that third sentence of the subsection in support of its contention that the statute creates "a universal limit" on attorney fees that may be paid to an attorney that has represented a prevailing party in a case in which punitive damages were awarded. In the estate's view, the cap on attorney fees contained in ORS 31.735(1)(a) applies not only to fees that would come out of the 40 percent of the punitive damages award allocated to the prevailing party under the statute, but also to fees like those at issue in this case—where the attorneys seek a portion of additional amounts recovered for the estate over and above the 40 percent allocated to the estate as the prevailing party based on a settlement with the state that required

significant additional work on the part of the attorneys. The attorneys, on the other hand, assert that the statutory cap "does not apply to the amounts received as a result of the post-judgment settlement with the State." They assert that the third sentence of ORS 31.735(1)(a) cannot be read in isolation and that, when the entirety of that subsection is considered together, it is clear that the "20% fee limitation modifies the sentence that immediately precedes it" and that the fee limitation "is based on the 40% prevailing party recovery." It points out that, had the legislature intended the fee limitation to be a universal limit on attorney fees, it could have placed the cap "in its own statutory subsection or separate paragraph."

We agree that the fee limitation, when considered in context, does not impose a universal limit on all fees that may be paid to the attorney for the prevailing party who receives punitive damages, regardless of circumstances. In particular, we agree with the attorneys that the fee cap does not apply to the fees at issue here.

Again, the third sentence of subsection (1)(a) provides: "However, in no event may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party." By beginning that sentence with the term "however," the legislature signaled that the sentence modifies the mandate set forth in the sentence that preceded it in the subsection—that is, that the attorney for the prevailing party must be paid out of the 40 percent allocated to that party "in the amount agreed upon between the attorney and the prevailing party." *See Webster's* at 1097 ("however" defined, in relevant part, as "in spite of that * * * BUT"). Furthermore, as used together in ORS 31.735(1)(a), the phrase, "[h]owever, in no event may" indicates that, notwithstanding the mandate of the second sentence of (1)(a) that the attorney be paid from the 40 percent in the amount agreed with the prevailing party, there is a limit on what the attorney may be paid out of that allocated amount. That is, regardless of any agreement between the attorney and the prevailing party, the attorney's fees from the prevailing party's 40 percent share of punitive damages may not exceed 20 percent of the total amount of punitive damages awarded in the case. Thus, we are unpersuaded

by the estate's understanding of "in no event" as used in ORS 31.735(1)(a). Under the statute, "in no event" may the attorney fees awarded out of the prevailing party's 40 percent share exceed the 20 percent limit; the statute does not impose a "universal" limit on fees.

The conclusion that the attorney fee cap set forth in ORS 31.735(1)(a) relates to fees on the prevailing party's 40 percent of the punitive damages award is confirmed by the text of ORS 31.735 as a whole. *See Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) (in construing a statute, "we do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole"). Initially, the statute mandates that a punitive damages award be distributed as set forth in the statute: "the punitive damages portion of an award *shall* be allocated as follows [in subsections (1)(a) and (1)(b)]." (Emphasis added.) As noted, under subsection (1)(a), 40 percent of the award goes to the prevailing party in the underlying case. Under ORS 31.735(1)(b), the remaining 60 percent of the punitive damages award must go to the state: "Sixty percent *shall* be paid to the Criminal Injuries Compensation Account[.]" (Emphasis added.) Accordingly, the statute contemplates that the *only* portion of the punitive damages award that a prevailing party can receive is the 40 percent allocated under the statute and that the remaining punitive damages will go to the state. Thus, in addressing payment of attorney fees from the prevailing party's allocated share of the punitive damages award, the statute does not address circumstances where the prevailing party has received a recovery above and beyond that 40 percent. The statute similarly does not address circumstances, like those here, where the prevailing party, through a settlement with the state and work by its attorneys in secondary litigation, obtains an additional recovery out of the state's allocated portion of the punitive damages award. Likewise, the statute does not address or limit the payment of attorney fees from the compensatory damages portion of a judgment.

Furthermore, the former version of the statute further confirms our understanding that the third sentence of ORS 31.735(1)(a) modifies and must be read in light of the sentences that precede it. *See Jones v. General Motors Corp.*,

325 Or 404, 411, 939 P2d 608 (1997) (a statute's context includes prior versions of the same statute). Specifically, the first version of the statute was enacted in 1987. *See* Or Laws 1987, ch 774, § 3. At that time, the statute—then numbered as *former* ORS 18.540—contained a separate subsection directed specifically at the payment of attorney fees:

> "The punitive damages portion of an award shall be distributed as follows:
>
> "(1) The attorney for the prevailing party shall be paid the amount agreed upon between the attorney and the prevailing party.
>
> "(2) One-half of the remainder shall be paid to the prevailing party.
>
> "(3) One-half of the remainder shall be paid to the Criminal Injuries Compensation Account * * *."

Although the statute was amended in 1991, *see* Or Laws 1991, ch 862, § 1, it continued to provide separately for attorney fees, the prevailing party share, and the state's share, each in a separate subsection. Then, in 1995, the relevant version of the statutory text was enacted. Or Laws 1995, ch 688, § 1. At that point, the paragraphs relating to attorney fees and the prevailing party's share were combined into a single subsection:

> "(a) Forty percent shall be paid to the prevailing party. The attorney for the prevailing party shall be paid out of the amount allocated under this paragraph, in the amount agreed upon between the attorney and the prevailing party. However, in no event may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party."

*Id.* (boldface omitted). As the attorneys point out, the former versions of the statute make clear that the legislature knew how to (and, in the past, did) provide for independent requirements on the payment of attorney fees from punitive damages awards. However, it did not do so in ORS 31.735(1)(a). Instead, it placed the provision relating to attorney fees within the paragraph relating to payment of the prevailing party's share and the added attorney fee cap, which (as noted, through the use of "however, in no event") was made

to directly reference the sentences that precede it in the subsection.[7]

As discussed above, in the 2004 agreement, the estate and the state agreed to resolve legal differences identified therein. As part of the agreed settlement of those "legal differences," the attorneys provided significant legal services in the declaratory judgment action aimed at supporting the state's position that Philip Morris was required to pay the state its 60 percent share of the punitive damage award, notwithstanding the state's participating in the MSA. As a result of those efforts, pursuant to the agreement, the estate obtained a significant amount of additional money—many millions of dollars more than it would have otherwise received. As we have explained, our interpretation of the text of ORS 31.735(1)(a), in context, convinces us that the attorney fee cap contained in the statute does not apply to fees sought in relation to that settlement. Instead, the fee cap limits the fees an attorney may receive that are based upon the prevailing party's 40 percent statutory share of a punitive damages award.[8] Accordingly, the court did not

---

[7] We note that, in support of its proposed interpretation of the attorney fee cap, the estate points to the Oregon Supreme Court's decision in *Strawn v. Farmers Ins. Co.*, 353 Or 210, 228, 297 P3d 439 (2013), in which the court observed that "the legislature, by statute, has limited the contingent fee that may be paid from a punitive damages award. Specifically, under *former* ORS 18.540(1)(a) (1999), no more than 20 percent of a punitive damages award may be awarded to a plaintiff's counsel as attorney fees." (Footnote omitted.) In that case, the court did not address the question at issue here. Indeed, there was no issue regarding the application of the attorney fee cap in ORS 31.735(1)(a). Instead, the court was presented with an attorney fee petition from counsel in a class action and considered whether to upwardly adjust the hourly rate received by the prevailing party's attorney under ORS 20.075(2)(h) (whether the fee is fixed or contingent). According to the court, comparison of the fee received under the lodestar rate to 50 percent of the total punitive damages award in the class action was not an appropriate test to determine the reasonableness of the rate. The court discussed the fee cap in determining that the attorneys were "not being undercompensated by the base lodestar fee." *Strawn*, 353 Or at 229. In that case, the court had no occasion to consider how the fee cap in ORS 31.735(1)(a) would apply in a case where the prevailing party, through settlement and secondary litigation, obtained an additional recovery from the state's 60 percent allocation of a punitive damages verdict.

[8] We have reviewed the legislative history submitted by the parties, and have not found it helpful in our analysis. *See Gaines*, 346 Or at 171-72 (in cases involving the meaning of a statute, parties may offer legislative history to the court and the value of the proffered legislative history is for the court to decide). The relevant statutory text was enacted in 1995, when the legislature both made the state a judgment creditor upon entry of a verdict including an award of punitive

err in granting the attorneys' motion for summary judgment and denying the estate's.

Affirmed.

**HADLOCK, J.,** dissenting.

Under ORS 31.735(1), 60 percent of any punitive damages award is allocated to the State of Oregon's Criminal Injuries Compensation Account and 40 percent is allocated to the prevailing party.[1] The prevailing party's attorney is to be paid from the amount of punitive damages allocated to the prevailing party according to the fee agreement between the prevailing party and the attorney. ORS 31.735(1)(a). "In no event," however, "may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party." *Id.* That provision operates to cap the fees that might otherwise be owed to the attorney under his or her fee agreement with the prevailing party. In my view, the provision means precisely what it says: that, "in *no* event"—*i.e.*, under *no* circumstances, regardless what side agreements or settlements the parties may have entered into—may the prevailing party's attorney receive more than 20 percent of the punitive damages award. Because the majority allows the estate's attorney to obtain a greater share of the punitive damages, I respectfully dissent.

The statutory cap on attorney fees is found in ORS 31.735(1)(a), which provides:

"Forty percent shall be paid to the prevailing party. The attorney for the prevailing party shall be paid out of the amount allocated under this paragraph, in the amount agreed upon between the attorney and the prevailing

damages (rather than upon entry of a judgment including such an award) and added the sentence at issue in this case. *See* Or Laws 1995, ch 688, § 1. However, the legislative history surrounding that amendment does not illuminate the question at issue in this case—whether the statutory cap on attorney fees applies to fees on a secondary recovery, over and above the prevailing party's 40 percent share, for the prevailing party in the underlying punitive damages action obtained as the result of both a settlement with the state and successful participation with the state in secondary litigation.

[1] Like the majority's, my references to ORS 31.735 "are to the version of the statutory text in effect between 1995 and 2011," before the 2011 amendments. 268 Or App at 109 n 1.

party. *However, in no event may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party."*

(Emphasis added.) According to the majority, the 20-percent cap applies only to those "fees an attorney may receive that are based upon the prevailing party's 40 percent statutory share of a punitive damages award." 268 Or App at 120. If the prevailing party recovers a greater share of the punitive damages, the majority reasons, the cap does not apply to fees "sought in relation to" that greater amount. *Id.*

My disagreement with the majority is based on three aspects of ORS 31.735. The first is the overarching purpose of the statute, which reflects the legislature's view of the appropriate allocation of a punitive damages award. Subsection (1) of the statute sets out the presumptive allocation of that award, with 40 percent allocated to the prevailing party and 60 percent to the Criminal Injuries Compensation Account. By specifying that the prevailing party's attorney will be paid from the 40 percent allocated to the prevailing party, the legislature ensured that those fees would not be deducted from the share allocated to the Criminal Injuries Compensation Account. And by specifying that the prevailing party's attorney may recover no more than 20 percent of the total punitive damages award, the legislature ensured that the prevailing party's relatively small share of the punitive damages award (40 percent) would not be reduced by more than half through payment of attorney fees. In other words, I view ORS 31.735 as ensuring that a total of at least 80 percent of a punitive damages award will be retained by the prevailing party and the Criminal Injuries Compensation Account, regardless of the type of fee agreement the prevailing party has with its attorney.

Second, I find significance in the legislature's decision to phrase the attorney fee cap in terms of the total amount of punitive damages awarded, not in terms of the amount of punitive damages allocated to the prevailing party. Had the legislature intended the cap to apply *only* to fees associated with the 40 percent of the punitive damages award that is statutorily allocated to the prevailing party, it easily could have written the statute to reflect that

intent, perhaps by wording the cap provision something like this:

"Forty percent shall be paid to the prevailing party. The attorney for the prevailing party shall be paid out of the amount allocated under this paragraph, in the amount agreed upon between the attorney and the prevailing party. *However, in no event may more than 50 percent of the amount of punitive damages allocated to the prevailing party under this section be paid to the attorney for the prevailing party.*"

But the legislature did not enact that hypothetical statute, written in terms of the punitive damages that are *allocated* to the prevailing party. Instead, it enacted a statute that limits the percentage of the "amount *awarded* as punitive damages" that may be paid to the attorney for the prevailing party. (Emphasis added.) In my view, the majority conflicts with the legislature's decision to cap the attorney fees to a percentage of the punitive damages award, not to a percentage of the amount of that award that is allocated to the prevailing party.

Third, the majority's holding that the fee cap does not apply in all circumstances conflicts with the statutory admonishment that, "in no event" may more than 20 percent of the punitive damages award be paid to the prevailing party's attorney. ORS 31.735(1)(a). Under the majority's analysis, in some events, the prevailing party's attorney may receive more than his or her statutory share.

Because I would reject the majority's interpretation of ORS 31.735(1), I briefly address the attorneys' alternative arguments for affirmance of the trial court's judgment. The attorneys first argue that the money that the state paid to the estate, pursuant to the 2004 settlement, was no longer part of "the punitive damages portion of an award." I disagree. That money had its source in the state's share of the $79.5 million punitive damages award and did not lose that character simply because it initially was allocated to the state before the state, in turn, agreed to pay it to the estate. Moreover, the settlement agreement recognized that that sum retained its character as a part of the punitive damages award: the agreement stated that it concerned "allocation

of recovered punitive damages" between the state and the estate and its attorneys.

The attorneys' second alternative argument is based on ORS 31.735(5), which provides:

> "Whenever any judgment creditor of a judgment which includes punitive damages governed by this section receives any payment on the judgment by or on behalf of any defendant, the judgment creditor receiving the payment shall notify the attorney for the other judgment creditors and all sums collected shall be applied as required by subsections (1) and (4) of this section, unless all affected parties, including the Department of Justice, expressly agree otherwise, or unless that application is contrary to the express terms of the judgment."

The attorneys argue that, pursuant to that provision, the parties expressly agreed to vary the statutory punitive damages allocation that otherwise would apply.

I agree, but only to a point, and not to a point that benefits the attorneys. ORS 31.735(5) permits the state and a prevailing party to agree to divide *their* shares of the punitive damages award (a total of at least 80 percent, as explained above) in a way other than the statute contemplates. Nonetheless, ORS 31.735(1)(a) still provides that, "in no event" may the prevailing party's attorney recover more than 20 percent of the total punitive damages award. Subsection (5) of the statute does not, in my view, alter that complete prohibition against the attorney taking more than his or her 20 percent share. Moreover, even if the statute did permit "all affected parties" to agree to circumvent the attorney fee cap, that did not happen here. The attorneys have pointed to nothing suggesting that the state and the estate expressly agreed that the 20-percent attorney fee cap would not apply to the portion of the punitive damages award originally allocated to the state but then paid to the estate.

I respectfully dissent.